**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | |
|---|---|
| JAY EARL HAYNES, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | )        No. 1:16-cv-01258-STA-jay |
| | ) |
| BERT C. BOYD, | ) |
| | ) |
|     Respondent. | ) |

**ORDER DIRECTING CLERK TO MODIFY RESPONDENT, DENYING § 2254
PETITION, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE
TO APPEAL *IN FORMA PAUPERIS***

Petitioner Jay Earl Haynes, a Tennessee state prisoner, has filed a *pro se* habeas corpus

petition (the "Petition"), pursuant to 28 U.S.C. § 2254.  (ECF No. 1.)  For the following reasons,

the Petition is **DENIED**.

BACKGROUND

In August 2009, the Dyer County, Tennessee, grand jury indicted Haynes on two counts

of rape involving the intellectually disabled adult twin grandsons of his girlfriend, in violation of

Tenn. Code. Ann. § 39-13-503.  (ECF No. 11-1 at 5.)  The Tennessee statute defines rape as "the

unlawful sexual penetration of a victim by the defendant or the defendant by a victim" when

"[t]he defendant knows or has reason to know that the victim is mentally defective, mentally

incapacitated or physically helpless[.]"  Tenn. Code Ann. § 39-13-503(a)(3).

At Haynes's jury trial, it was established that the victims, who were nineteen years old at

the time of the rapes, "lived with their mother and required constant adult supervision because

they had the mental development of a child."  *State v. Haynes*, No. W2012-01917-CCA-R3-CD,

2013 WL 3807992, at *1 (Tenn. Crim. App. July 17, 2013) (hereinafter "*Haynes I*"), *perm.*

1

*appeal denied* (Tenn. Nov. 13, 2013). The victims' grandmother testified that, on June 26, 2009, to June 27, 2009, the twins stayed overnight at her house, which she shared with the Defendant. (ECF No. 11-4 at 79, 81–82.) In the early morning hours of June 27, "she received a call that she needed to be at work at 4:00 a.m." *Haynes I*, 2013 WL 3807992, at *1. "She left for work while [Haynes] and the victims were sleeping." *Id.*

The victims testified that, while their grandmother was at work, Haynes anally raped each of them twice. *Id.* He "told the victims not to tell what had happened." *Id.* When they were returned home later that day, they "told [their mother] what had occurred while at their grandmother's house." *Id.* "As a result, their mother called their father and the police." *Id.* The victims were subsequently examined at the hospital, "where nurses . . . found that both victims showed signs of anal redness and slight injury to the anus." *Id.* The victims' father "decided to confront" Haynes and observed him walking out of the grandmother's house and approaching a "burn barrel." *Id.* "Before [Haynes] could put [bed] sheets in the barrel, the victims' father ran over and knocked the barrel over to put out the fire." *Id.*

Forensic and clinical psychiatrist Dr. Fred Steinberg testified regarding his evaluations of the victims and the Defendant. (ECF No. 11-3 at 49–128.) He reported "that the victims were both mildly mentally retarded[,] . . . had a low IQ," and "functioned at a five-year-old level with regard to their development, including language development, self-direction, and socialization." *Haynes I*, 2013 WL 3807992, at *3. He opined "that at the time of the rapes, the victims did not have the ability to consent to sexual intercourse." *Id.* Dr. Steinberg related that the Defendant was mildly mentally retarded, had "a higher level of executive functioning" than the victims, and could understand and "plan . . . sexual activity[.]" (ECF No. 11-3 at 119–23.)

The jury convicted Haynes on both counts of rape.  *Haynes I*, 2013 WL 3807992, at \*2.  The circuit court sentenced him to two consecutive twenty-year terms of imprisonment.  *Id.*  The Defendant took an unsuccessful direct appeal.  *Id.* at \*1, 5.  He filed a timely *pro se* petition for state post-conviction relief (ECF No. 11-13 at 9–19), which appointed counsel amended (*id.* at 24–28).  The post-conviction court held an evidentiary hearing and denied relief.  (*Id.* at 31–32.)  The Tennessee Court of Criminal Appeals (the "TCCA") affirmed the decision and the Tennessee Supreme Court denied permission to appeal.  *See Haynes v. State*, No. W2015-00919-CCA-R3-PC, 2016 WL 750233, at \*1 (Tenn. Crim. App. Feb. 26, 2016) (hereinafter "*Haynes II*"), *perm. appeal denied* (Tenn. June 24, 2016).

## DISCUSSION

In September 2016, Haynes filed his Petition, asserting that counsel provided ineffective assistance ("Claim 1"), and a claim challenging the constitutionality of the state statute under which he was convicted ("Claim 2").  (ECF No. 1 at 5–15.)  Respondent Bert C. Boyd[1] filed a Motion to Dismiss and most of the state court record.  (ECF Nos. 11, 12.).  He argued that Haynes submitted the Petition to prison authorities for mailing two days beyond the expiration of the limitations period.  (ECF No. 12 at 5–6.)  The Court found that the Petition was timely and ordered Respondent to answer the Petition.  (ECF No. 18.)  Respondent filed his Answer on May 18, 2018, arguing that Claim 1 is without merit and Claim 2 is procedurally defaulted.  (ECF No. 23 at 1–2.)  Haynes did not file a reply, although allowed to do so.  (*See* ECF No. 18 at 5.)

---

[1]  The Clerk is **DIRECTED** to substitute Bert C. Boyd for Randy Lee as Respondent.  *See* Fed. R. Civ. P. 25(d).

I.    **Legal Standards**

  A. **Federal Habeas Review**

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorisim and Effective Death Penalty Act ("AEDPA").  *See* 28 U.S.C. § 2254.  Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts.  28 U.S.C. § 2254(d).  In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court."  *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)–(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case."  *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first

instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary.  *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).  A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'"  *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

### B.  Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984).  To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense."  *Id.* at 687.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  A court considering a claim of

ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim: "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

## II.   Claim 1

Petitioner asserts that "counsel was ineffective for failing to challenge the constitutionality of Tennessee Code Annotated § 39-13-503(a)(3), as applied in [his criminal] case." (ECF No. 1 at 5 (altered for irregular capitalization).) He complains that, because his criminal "case was tried in 2012, more than nine (9) years after the Supreme Court's decision in

*Lawrence v. Texas*, . . . there was no legitimate reason for counsel to not have discovered this case had he done the proper legal research." (*Id.* at 6.)  According to Haynes, "[h]ad counsel properly investigated the legal issues of this case he . . . would have found that [the rape statute], as applied in [his] case, infringed upon [his] fundamental right to privacy by criminalizing consensual sex between mentally handicapped adult persons." (*Id.*)  Respondent maintains that the TCCA's determination that counsel did not provide ineffective assistance regarding a *Lawrence* argument was not contrary to *Strickland*, based on unreasonable factual determinations, or the result of an unreasonable application of *Strickland*'s standards to the facts. (ECF No. 23 at 6–12.)  A review of counsel's brief on direct appeal and the TCCA's post-conviction ruling shows that Respondent's argument is well-taken.

In *Lawrence*, "the Supreme Court held that state laws against sodomy violate the Due Process Clause[.]"  *Ondo v. City of Cleveland*, 795 F.3d 597, 608–09 (6th Cir. 2015) (citing *Lawrence*, 539 U.S. at 574–78).  The *Lawrence* Court emphasized that its decision did not reach all forms of sexual activity.  *See Lawrence*, 539 U.S. at 578.  Rather, the ruling was limited to cases "involv[ing] two adults who, with full and mutual consent from each other, engage[] in sexual practices common to a homosexual lifestyle." *Id.*

On direct appeal, Haynes's counsel used *Lawrence*'s ruling to challenge the sufficiency of the evidence to convict the defendant of rape.[2]  He first posited that, unless a consent element were read into the statute, the Tennessee rape law forbidding sexual activity with a person with mental deficiencies was facially unconstitutional under *Lawrence* because it proscribes the consensual sexual activity of adults with such deficiencies.  (ECF No. 11-8 at 14–15.) Specifically, he maintained that

---

[2]  Trial counsel also represented Petitioner on appeal.  *See Haynes II*, 2016 WL 750233, at *2–3.

7

> [d]espite the fact that the statute in question, T.C.A. 39-13-503[a](3), mandates no element of consent, . . . the real issue in this cause is whether the alleged victims had the mental capacity to consent to sex and if not, whether the defendant knew or had reason to know whether their mental abilities rendered them unable to consent to sex.  Logically, this has to be the question because a literal reading of the statute charged, alleges no crime but rather simply proscribes individuals of lesser intelligence from engaging in sex.  It is axiomatic that all people have a constitutional right to have sex and/or procreate if they so choose. *See Garner v. Texas*, 539 U.S. 558 (2003) (In its entirety).  As such, the issue of consent must impliedly be an element of the charge for which defendant was convicted.

(*Id.*)

Counsel then argued that "no reasonable trier of fact could have concluded that [the victims] lacked the capacity to consent to sex."[3]  (*Id.* at 15.)  He further asserted that the evidence was insufficient to show "that the defendant could have known or had reason to know that any alleged defect prohibited [the victims] from consenting to engage in sex." (*Id.* at 20.)

In his state post-conviction petition, Haynes asserted that counsel provided ineffective assistance by failing to present an as-applied challenge under *Lawrence* to the Tennessee rape statute.  (ECF No. 11-13 at 10–18.)  He insisted that *Lawrence* protected his right as a mentally disabled person from engaging in consensual sex with other mentally disabled adults.  (*Id.* at 12.)  At the post-conviction hearing, "[c]ounsel testified that he addressed whether the rape statute was facially unconstitutional, not as applied to the petitioner." *Haynes II*, 2016 WL 750233, at *2.  He explained "that he dealt with the statute's application to the petitioner 'in terms of ... the sufficiency of the evidence.'"  *Id.*  He recalled "that his strategy was to prove that even if the victims were mentally disabled, the State failed to prove that the petitioner knew that they were due to his own mental disability." *Id.* at *3.  Counsel "summarized that his two issues at trial

---

3   "[O]n review of the sufficiency of the evidence to support a criminal conviction," the question before the court is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979).

were whether the victims were competent to consent and whether the petitioner 'had the ability to tell that.'" *Id.*

The post-conviction trial court denied relief and Petitioner appealed. *Id.* at *1. In affirming the lower court's decision, the TCCA applied *Strickland*'s standards and concluded that counsel was not ineffective for failing to present an as-applied argument based on *Lawrence*. *Id.* at *4. The court determined that counsel did not perform deficiently because he "actually made a constitutional claim" that the rape law "violated a constitutionally protected action of intellectually disabled persons to engage in sexual activities under *Lawrence v. Texas* unless a consent requirement was read into the statute." *Id.* at *5.

Petitioner, here, does not assert that the TCCA's decision was "contrary to," 28 U.S.C. § 2254(d)(1), clearly established Supreme Court law. Such an argument would, in any event, be without merit because the appellate court correctly invoked *Strickland*'s standards. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

Haynes does insist, however, that the TCCA's factual determination that counsel presented a challenge to his convictions based on *Lawrence* is not supported by the record. He alleges that he "has been unable to locate" in the direct appeal brief counsel's reliance on that case. (ECF No. 1 at 11.) The argument is misplaced. Counsel cited to "*Garner v. Texas*," rather than "*Lawrence v. Texas*." (*See* ECF No. 11-8 at 14.) As Respondent correctly points out, "Garner was a co-defendant on the same case and thus was listed as a second appellant-petitioner in *Lawrence*." (ECF No. 23 at 9 n.2 (citing *Lawrence*, 539 U.S. at 562–63).) Accordingly, the

TCCA's finding that counsel raised an issue under *Lawrence* is supported by the record and, thus, is not an unreasonable factual determination.

Petitioner also challenges the TCCA's application of *Strickland*'s standards to the facts of his case.  He maintains that the court's conclusion that counsel was not ineffective for choosing to argue *Lawrence* in the context of evidence-sufficiency, rather than through an as-applied argument, was unreasonable.  (ECF No. 1 at 11–12.)  Haynes's argument is unavailing.

To succeed on a claim that appellate counsel was ineffective for failing to present a certain argument, a petitioner must overcome the presumption that counsel rendered effective assistance in choosing which issues to press on appeal.  *Dufresne v. Palmer*, 876 F.3d 248, 257 (6th Cir. 2017) (citing *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004)).  "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome."  *Id.* (quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008)) (brackets in original).  "[A] petitioner also 'must demonstrate a reasonable probability that, but for his counsel's unreasonable failure to raise [an] issue on appeal, he would have prevailed."  *Id.* (quoting *Webb v. Mitchell*, 586 F.3d 383, 399 (6th Cir. 2009) (internal quotation marks omitted).

Petitioner, here, does not explain how the as-applied argument he insists counsel should have made was "clearly stronger" than the argument counsel did make.  Indeed, an as-applied argument would have been problematic.  As previously discussed, the Supreme Court limited its ruling in *Lawrence* to cases involving sexual activity between "mutual[ly] consent[ing]" adults.  *Lawrence*, 539 U.S. at 578.  The Court was careful to note that its ruling does not apply to cases "involv[ing] persons . . . who are situated in relationships where consent might not easily be refused."  *Id.*  Haynes attempts to fit his case within *Lawrence*'s scope by insisting that his

victims consented to the sexual intercourse.  (ECF No. 1 at 6.)  The record, however, suggests

that the victims did not have the mental capacity to consent and that Petitioner had greater

executive function than the victims and could understand and plan the sexual activity.  *See*

*Haynes I*, 2013 WL 3807992, at \*3 ("Dr. Steinberg . . . opined that at the time of the rapes, the

victims did not have the ability to consent to sexual intercourse."); *Haynes II*, 2016 WL 750233,

at \*2 (Steinberg "concluded that the petitioner had the executive function to make decisions that

the victims lacked"); (ECF No. 11-3 at 75, 81, 119–23 (Steinberg opined that Haynes had greater

executive function than the victims and could "plan . . . sexual activity").)  *See e.g., Schroeder v.*

*Tegels*, No. 17-CV-139-BBC, 2017 WL 2126889, at \*4 (W.D. Wis. May 16, 2017) (citing

*Lawrence*, 539 U.S. at 578) (petitioner's "as-applied challenge" to state sexual assault statute

"would have been unsuccessful because the jury found that petitioner's girlfriend did *not* consent

to [his] conduct and the constitutional right of sexual privacy is limited to consensual conduct")

(emphasis in original), *appeal den.* (7th Cir. Sept. 27, 2017).

Accordingly, Petitioner has not shown that the TCCA's determination that counsel was

not ineffective regarding a *Lawrence* argument was an unreasonable application of *Strickland*'s

standards to the facts of his case.  Claim 1 is therefore **DENIED**.

### III.     Claim 2

Petitioner asserts that the Tennessee rape statute "is unconstitutional as applied in [his]

underlying case."  (ECF No. 1 at 12 (altered for irregular capitalization).)  He insists that the

statute "infringed upon [his] fundamental right to privacy by criminalizing consensual sex

between mentally handicapped adult persons."  (*Id.*)   Respondent argues that Petitioner

procedurally defaulted the claim.  (ECF No. 23 at 12–13.)  The Court agrees.

11

Haynes did not challenge the statute as unconstitutional on direct appeal or before the post-conviction trial court.  *See Haynes I*, 2013 WL 3807992, at \*1; (ECF No. 11-8 at 5; ECF No. 11-13 at 10–18, 24–28.)  In his post-conviction appeal, he argued, for the first time, that the statute is unconstitutionally overbroad, and is also "impermissibly vague" as applied to him, in part because it "can be read so as to prohibit two mentally defective individuals from engaging in private sexual conduct" in violation of *Lawrence*.[4]  (ECF No. 11-16 at 15); *see also Haynes II*, 2016 WL 750233, at \*5 ("The petitioner asserts that the [statute is] vague[] . . . as applied to him" and "is overbroad.")  The TCCA held that the arguments were waived because they "were not raised in the petition or addressed in the trial court."  *Haynes II*, 2016 WL 750233, at \*5 (quoting *Brown v. State*, 928 S.W.2d 453, 457 (Tenn. Crim. App. 1996)).

In Tennessee, "[a]n issue not presented in a petition for post-conviction relief may not be raised for the first time on appeal."  *Beechem v. State*, No. W2010-02271-CCA-R3PC, 2012 WL 2514904, at \*6 (Tenn. Crim. App. July 2, 2012) (unpublished) (citing Tenn. Code Ann. § 40–30–106(g), *perm. appeal denied* (Tenn. Oct. 16, 2012); *State v. Johnson,* 970 S.W.2d 500, 508 (Tenn. Crim. App.1996) ("Issues raised for the first time on appeal are considered waived.")).  The Sixth Circuit has found that Tennessee's waiver rule, Tenn. Code Ann. § 40-30-106(g), is an independent and adequate state procedural rule that will generally bar federal habeas review.  *See Cone v. Bell*, 243 F.3d 961, 969 (6th Cir. 2001), *overruled on other grounds by Bell v. Cone,* 535 U.S. 685 (2002)).  Claim 2 is therefore procedurally defaulted.

---

[4]  Respondent asserts that Petitioner did not present, on post-conviction appeal, the argument on which Claim 2 is premised.  (ECF No. 23 at 14.)  As noted, however, Petitioner presented the *Lawrence* issue in his post-conviction appellate brief as part of his as-applied vagueness argument (*see* ECF No. 11-16 at 15), and the TCCA recognized that he was challenging the statute's vagueness as applied to him, *see Haynes II*, 2016 WL 750233, at \*5.  Nevertheless, even if Claim 2 could reasonably be viewed as asserting an argument that was never presented to the state courts, the claim would, for that reason, still be regarded as procedurally defaulted.

Petitioner maintains that post-conviction counsel's failure to "fully present[]" the claim before the post-conviction trial court is cause to excuse the default.  (ECF No. 1 at 15.)  He is mistaken.  It is well-established that a post-conviction attorney's ineffective assistance will not excuse the procedural default of a trial error claim.  *See Abdur'Rahman v. Carpenter*, 805 F.3d 710, 716 (6th Cir. 2015).  Accordingly, as Claim 2 is not properly before the Court, it is **DISMISSED**.

For the foregoing reasons, the Petition is **DENIED**.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2)–(3).   A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"  *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition.  Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *Id.*

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is therefore **DENIED**.[5]

   **IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: April 24, 2020.

---

[5] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.